IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA and ALASKA PROFESSIONAL HUNTERS ASSOCIATION,<br><br>          Plaintiffs,<br><br>  v.<br><br>SALLY JEWELL, in her official capacity as the United States Secretary of the Interior; DANIEL ASHE, in his official capacity as Director of the U.S. Fish and Wildlife Service; THE U.S. FISH AND WILDLIFE SERVICE; and THE UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>          Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. 4:13-cv-00034-SLG |

## ORDER GRANTING MOTION TO DISMISS

Before the Court at Docket 29 is a Motion to Dismiss filed by Defendants. The motion seeks dismissal of this action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs opposed at Docket 33, and Defendants replied at Docket 40.[1] The Court heard oral argument on the motion in Fairbanks, Alaska on July 9, 2014.[2] Having considered the arguments of the parties, the documents filed with the Court, and the applicable law, the Court will grant Defendants' motion and dismiss this action as moot.

---

[1] Defendants also filed a Notice of Supplemental Authority at Docket 45.

[2] Docket 46 (Minute Entry). Following oral argument, Plaintiff Alaska Professional Hunters Association ("APHA") filed a Notice of Submission of Documents Referenced During July 9, 2014 Oral Argument at Docket 47. In the notice, APHA requests that the Court take judicial notice of six government documents. Docket 47 at 1–2. The Court has taken judicial notice of these documents for the purpose of deciding the motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts material to the Court's decision are drawn from the Amended Complaint and the documents submitted by the parties with their briefing on the Motion to Dismiss. These facts do not appear to be in dispute.[3]

On October 1, 2013—the first day of fiscal year 2014—Congress had yet to enact an appropriations bill for the fiscal year, so the United States government entered into a shutdown.[4] On October 4, 2013, USFWS Director Daniel Ashe issued a "National Wildlife Refuge System Closure Determination and Notice," which stated in part:

> Pursuant to 50 C.F.R. §§ 25.21(e) and 36.42, as of October 1, 2013, all units of the National Wildlife Refuge System nationwide are closed to public visitation and use, subject to the conditions and exceptions described below. This national closure determination and notice is necessitated by a lapse in funds appropriated by the United States Congress for the operation of the National Wildlife Refuge System and will remain in effect until funding is restored.[5]

The Closure Notice also provided that it would "expire automatically at the end of the shutdown period[,] except that the provisions applicable to Alaska will expire no later than October 31, 2013."[6]

On October 9, 2013, an Alaska Department of Fish and Game ("ADF&G") official sent an email to a USFWS official asking whether the Closure Notice prohibited ADF&G

---

[3] *See infra* note 23.

[4] Docket 16 at 13 ¶ 40 (Am. Compl.).

[5] Docket 30-1 at 1 (Ex. 1 to Mot.: Closure Notice). The Closure Notice was issued in accordance with the Department of the Interior Contingency Plan for Operations in the Absence of FY 2014 Appropriations. *See* Docket 47-4 at 2 (Ex. 4 to Notice of Submission of Docs. Referenced During July 9, 2014 Oral Arg.: DOI Contingency Plan) (stating in event of shutdown, "[a]ll areas of the National Park and National Wildlife Refuge Systems would be closed and public access would be restricted").

[6] Docket 30-1 at 2 (Ex. 1 to Mot.: Closure Notice).

staff from entering national wildlife refuges "to conduct routine research and management activities."[7] The next day, the USFWS official responded that USFWS was "not able to allow State management activities on national wildlife refuge lands during the government shutdown."[8]

On the morning of October 16, 2013, the State of Alaska filed this lawsuit for declaratory and injunctive relief.[9] At that same time, the State filed a Motion for a Temporary Restraining Order and Preliminary Injunction, seeking an order prohibiting Defendants from closing all national wildlife refuges in Alaska during the pendency of the lawsuit.[10] A few hours after the State filed its Complaint, USFWS issued a "Clarification" that provided that the Closure Notice "does not apply to fish and wildlife research activities conducted by [ADF&G] on national wildlife refuges in Alaska."[11]

The next day, Congress enacted the Continuing Appropriations Act, which restored funding to all federal agencies.[12] All national wildlife refuges were reopened at

---

[7] Docket 33-2 at 1 (Ex. B to Opp'n: 10/9/13 Email from ADF&G to USFWS). Pursuant to a 1982 Memorandum of Understanding between ADF&G and USFWS, ADF&G is the agency with the primary responsibility for managing fish and wildlife in Alaska, and it has "the right . . . to enter onto [USFWS] lands at any time to conduct routine management activities which do not involve construction, disturbance to the land, or alterations." Docket 16 at 13 ¶ 39 (Am. Compl.).

[8] Docket 33-2 at 1 (Ex. B to Opp'n: 10/10/13 Email from USFWS to ADF&G). Additionally, Alaska Governor Sean Parnell contacted DOI Secretary Sally Jewell multiple times to express concerns over the closure of the refuges. *See* Docket 33-9 (Ex. I to Opp'n: 10/4/13 Letter from Sean Parnell to Sally Jewell); Docket 33-11 (Ex. K to Opp'n: 10/11/13 Letter from Sean Parnell to Sally Jewell); Docket 33-12 (Ex. L to Opp'n: 10/15/13 Letter from Sean Parnell to Sally Jewell).

[9] Docket 1 (Compl.).

[10] Docket 4 (Mot. for TRO & Prelim. Inj.).

[11] Docket 30-3 (Ex. 3 to Mot.: Clarification of Closure Notice).

[12] *See* Continuing Appropriations Act, 2014, Pub. L. No. 113-46, 127 Stat. 558.

that time.[13] That same day, the State filed a notice withdrawing its Motion for a Temporary Restraining Order and Preliminary Injunction, but indicating the State would "continue to seek declaratory relief and a permanent injunction as set forth in its complaint."[14]

On December 27, 2013, the State filed an Amended Complaint, which added the Alaska Professional Hunters Association ("APHA") as a Plaintiff.[15] The Amended Complaint alleges the State and APHA were harmed by the October 2013 refuge closure. Specifically, it alleges the closure "infringe[d] on the State's ability to access [refuge] lands as guaranteed under [the Alaska National Interest Lands Conservation Act ("ANILCA")] and interfere[d] with the State's authority and ability to manage and conserve the fish and wildlife."[16] The Amended Complaint also alleges the closure "barred APHA members from all means of access to the refuges to utilize their US[F]WS guiding permits," resulting in lost income.[17]

The Amended Complaint asserts the closure violated the following laws:

- Section 1110(a) of ANILCA and the regulation implementing that statute (43 C.F.R. § 36.11(h)), which permit certain modes of transport to be used in national wildlife refuges in Alaska and require notice and a hearing before these modes of transport may be temporarily or permanently prohibited;

- 50 C.F.R. § 36.41(h), which explains when a permit for economic and/or other privileged uses on national wildlife refuges in Alaska may be restricted, suspended, or revoked; and

---

[13] Docket 16 at 20 ¶ 67 (Am. Compl.).

[14] Docket 12 at 1 (Notice of Withdrawal of Mot. for TRO & Prelim. Inj.).

[15] Docket 16 (Am. Compl.).

[16] Docket 16 at 5 ¶ 17 (Am. Compl.).

[17] Docket 16 at 6 ¶ 20 (Am. Compl.).

- 50 C.F.R. § 36.42(c), which contains public participation requirements for national wildlife refuge closures in Alaska.[18]

The Amended Complaint asks the Court to (1) declare the October 2013 refuge closure unlawful and (2) permanently enjoin Defendants from enforcing a closure without complying with the above-listed laws.[19] It asserts this relief is necessary to "help to avoid future injury to Plaintiffs due to closures of refuges."[20]

Defendants moved to dismiss the Amended Complaint on February 6, 2014, asserting the Court lacks subject matter jurisdiction because this case is moot.[21] That motion has now been fully briefed, and oral argument has been held.[22]

## DISCUSSION

The plaintiff bears the burden of establishing subject matter jurisdiction when a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1).[23] Under

---

[18] *See* Docket 16 at 23–24 (Compl.). The Amended Complaint also alleges a violation of the Administrative Procedure Act. Docket 16 at 22.

[19] Docket 1 at 15 (Compl.).

[20] *See* Docket 16 at 9 ¶¶ 27–28 (Am. Compl.).

[21] Docket 29 at 1–2 (Mot.). Defendants also assert the State lacks standing, APHA has not properly been made a party to this action, Plaintiffs' claims are not reviewable under the Administrative Procedure Act, and prudential considerations require dismissal. Docket 30 at 9 (Mot.). The Court does not reach these alternative arguments in support of dismissal because the Court agrees with Defendants that this action is moot.

[22] *See supra* text accompanying notes 1–2.

[23] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Generally, when the parties present materials outside the pleadings, the challenge is considered factual, and the court may review this extrinsic evidence and need not presume the truth of the

Article III of the Constitution, "[t]he jurisdiction of the federal courts is limited to 'cases' and 'controversies.'"[24] This case-or-controversy requirement applies at all stages of a lawsuit; "[i]t is not enough that a dispute was very much alive when suit was filed."[25] Generally, a case becomes moot—and the court is divested of jurisdiction—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[26]

There are, however, exceptions to the mootness doctrine, where a court will determine an issue even if there is no longer a live controversy.[27] One exception exists "where an action is 'capable of repetition, yet evading review.'"[28] This exception "is limited to 'extraordinary cases' in which (1) 'the duration of the challenged action is too short to be fully litigated before it ceases,' and (2) 'there is a reasonable expectation that

---

allegations in the complaint. *See id.* Here, the parties have presented materials outside the pleadings with their briefing, and the Court has considered these materials. However, the Court has also accepted certain factual allegations in the Amended Complaint as true because they do not appear to be in dispute.

[24] *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1138 (9th Cir. 2013) (quoting U.S. Const. art. III, § 2), *reh'g en banc denied*, 741 F.3d 1075 (9th Cir. 2014).

[25] *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

[26] *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)); *see also W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council*, 643 F.3d 701, 704 (9th Cir. 2011) (case is moot "if there exists no 'present controversy as to which effective relief can be granted'" (quoting *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007)) (internal quotation marks omitted)).

[27] *See In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (listing exceptions recognized by Ninth Circuit).

[28] *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *So. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)).

the plaintiffs will be subjected to the same action again.'"[29] Another exception exists where a "defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time."[30]

Here, because the Court can no longer remedy Plaintiffs' injuries stemming from the October 2013 refuge closure with declaratory or injunctive relief, Plaintiffs' claims are moot.[31] Plaintiffs assert, however, that the capable-of-repetition-yet-evading-review and voluntary-cessation exceptions to the mootness doctrine each apply.[32] The Court will analyze the applicability of these exceptions in turn.

I. **The capable-of-repetition-yet-evading-review exception does not apply because Plaintiffs have not demonstrated a reasonable expectation that they will be subjected to a similar refuge closure in the future.**

With respect to prong one of the capable-of-repetition-yet-evading-review exception, Plaintiffs have demonstrated that their injuries are "of a type inherently limited in duration such that [they are] likely always to become moot before federal court litigation is completed."[33] The 2013 government shutdown and the Closure Notice attributable to it lasted sixteen days, and none of the government shutdowns since 1976

---

[29] *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997)).

[30] *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). This exception does not apply when "there is no reasonable expectation that the illegal action will recur." *Id.*

[31] Plaintiffs appear to agree that their claims are moot. *See* Docket 33 at 22 (Opp'n).

[32] Docket 33 at 22–32 (Opp'n).

[33] *See Native Vill. of Noatak*, 38 F.3d at 1509–10.

has lasted longer than twenty-one days.[34] This is not enough time for complete judicial review.[35]

With respect to prong two, Plaintiffs assert that "[s]ince 1976 the Government has experienced eighteen different 'funding gaps' that led to corresponding shutdowns."[36] Plaintiffs maintain this history of government shutdowns, "as well as defendants' position that closure of all wildlife refuges was required in response to a lack of appropriations and authorized by ANILCA," demonstrates it is reasonable to expect a refuge closure will happen again.[37]

---

[34] *See* Docket 33 at 10 (Opp'n) (citing Jessica Tollestrup, Cong. Research Serv., *Federal Funding Gaps: A Brief Overview* 3 (Oct. 11, 2013), *available at* http://fas.org/sgp/crs/misc/RS20348.pdf).

[35] *See Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999) ("The Supreme Court [has] held that 18 months was not enough time for complete judicial review. . . . [And] this court [has] held that . . . 12 months was not enough time for judicial review."). Defendants asserts "Plaintiffs' inability to obtain judicial review during the pendency of the closure order was largely attributable to their delay in filing this lawsuit." Docket 30 at 12 (Mot.). Defendants further assert the capable-of-repetition-yet-evading-review exception does not apply "where a plaintiff 'did not take all steps necessary' to prevent the dispute from becoming moot." Docket 30 at 12–13 (quoting *Koppers Indus., Inc. v. U.S. EPA*, 902 F.2d 756, 759 (9th Cir. 1990)). In *Koppers*, the case cited by Defendants, plaintiff appealed the district court's denial of its motion to quash an administrative warrant issued to defendant EPA. 902 F.2d at 757. At the time of the appeal, the warrant had already been executed. *Id.* at 758. The Ninth Circuit held the capable-of-repetition-yet-evading-review exception did not apply because plaintiff did not move to stay execution of the warrant or refuse to comply with the warrant, and therefore did not preserve the issue for appellate review. *Id.* at 759. *Koppers* is distinct from the instant case, where "there was no action that [P]laintiffs failed to take that would have prevented this case from becoming moot." *See* Docket 33 at 25–26 (Opp'n).

[36] Docket 33 at 10 (citing Jessica Tollestrup, Cong. Research Serv., *Federal Funding Gaps: A Brief Overview* 3 (Oct. 11, 2013), *available at* http://fas.org/sgp/crs/misc/RS20348.pdf); *see also* Docket 33 at 27 (Opp'n). According to the source cited by Plaintiffs, some of the funding gaps did not last long enough for shutdown operations to be completed. Tollestrup, *supra*, at 4. And the 1996 shutdown—the most recent shutdown prior to 2013—affected various agencies differently. *Id.* at 4–7.

[37] Docket 33 at 26–28 (Opp'n).

Plaintiffs assert that "[i]n estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past."[38] But in this case, even if the history of government funding gaps makes it reasonable to expect that another shutdown will occur at some point in the future, it does not make it reasonable to expect that Defendants' response to a future shutdown would be the same as the response to the 2013 shutdown.[39] At oral argument, counsel for the State stated that to her knowledge, no shutdown prior to 2013 had affected access to national wildlife refuges. Thus, the only fact in the record before the Court that suggests a refuge closure may happen again is the fact that it happened once. This is insufficient to demonstrate a reasonable expectation that Plaintiffs will be subjected to a closure in the future.[40] Plaintiffs' case therefore fails to satisfy the capable-of-repetition-yet-evading-review exception to the mootness doctrine.

---

[38] *See* Docket 33 at 27 (Opp'n) (quoting *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc)).

[39] *See* Docket 30 at 13 (Mot.) ("In order for the injury of which Plaintiffs complain to occur again, not only would Congress . . . have to allow another complete lapse of appropriations, but [US]FWS would have to employ the same contingency plan in a similar way."); *see also Arc of Cal. v. Douglas*, No. 13-16544, -- F.3d --, 2014 WL 2922662, at *5 (9th Cir. June 30, 2014) ("[W]e have hesitated to hold reasonable the expectation that complex political action motivated by fiscal scarcity will recur.").

[40] *See Foster v. Carson*, 347 F.3d 742, 748 (9th Cir. 2003) (holding plaintiffs' challenge to judicial order suspending appointment of indigent defense council during budget shortfall did not fall within capable-of-repetition-yet-evading-review exception to mootness doctrine because only fact that supported plaintiffs' claim that similar order might be issued again in future "is that it happened once").

## II. The voluntary-cessation exception does not apply because the reopening of the national wildlife refuges was a response to the appropriations bill, not Plaintiffs' lawsuit.

Plaintiffs assert "Defendants voluntarily ended the closure of all wildlife refuges in Alaska."[41] However, the Ninth Circuit has made clear that for the voluntary-cessation exception to the mootness doctrine to apply, "the defendant's voluntary cessation must have arisen *because of* the litigation."[42] In this case, although USFWS's "Clarification" of the Closure Notice may have been issued in response to the State's lawsuit,[43] the closure itself ended because of the passage of an appropriations bill. Indeed, by its own terms, the Closure Notice expired "automatically at the end of the shutdown period."[44] Therefore, the voluntary-cessation exception to the mootness doctrine does not apply.

//

//

//

//

//

---

[41] Docket 33 at 31 (Opp'n).

[42] *Pub. Utils. Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996) (emphasis in original).

[43] *See supra* text accompanying notes 9–11 (explaining Clarification was issued shortly after State filed suit).

[44] Docket 30-1 at 2 (Ex. 1 to Mot.: Closure Notice).

## CONCLUSION

This action is moot, and no exception to the mootness doctrine applies.[45] Accordingly, the Motion to Dismiss at Docket 29 is GRANTED, and this action is DISMISSED with prejudice. The Clerk of Court shall enter judgment accordingly.

DATED this 29th day of July, 2014, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[45] Because the Court has determined this action is moot, the Court does not address Defendants' alternative arguments in support of dismissal. *See supra* note 21.